UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 4:05-cr-38 |
| v. ) | |
| ) | *Collier\Lee* |
| DAVID DONALDSON ) | |

## REPORT AND RECOMMENDATION

**I.     Introduction**

Defendant David Donaldson ("Defendant") filed a motion to suppress claiming the incriminating statement he made during custodial interrogation on November 21, 2005, should be suppressed because it was procured in violation of his constitutional rights [Doc. 74]. Defendant's motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 78]. On December 20, 2007, I recommended the Defendant's motion to suppress be denied [Doc. 89]. On February 5, 2008, the Court accepted and adopted the report and recommendation in part and requested consideration of whether the dual sovereignty doctrine applied to Defendant's Sixth Amendment claim [Doc. 93]. The parties agreed to a briefing schedule to address the dual sovereignty doctrine [Doc. 95], and they have now filed their respective briefs [Doc. 99 & 100].

This matter is ripe for decision. For the reasons stated herein, I **RECOMMEND** the remaining aspect of Defendant's motion to suppress, which asserts his Sixth Amendment constitutional rights were violated when he was questioned on November 21, 2005, be **DENIED** based upon the application of the dual sovereignty doctrine to Defendant's Sixth Amendment right

to counsel.

## II. Facts

The largely undisputed facts of this matter have been set forth in detail in the prior report and recommendation [Doc. 89], and will not be repeated herein except as necessary. In summary, the parties agree Defendant was arrested by state officers on September 1, 2005 and charged under Tennessee state law with various crimes, including unlawful possession of a firearm. The Defendant, who had been in custody since his arrest, was appointed an attorney for the state charges on September 29, 2005. A special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, Stephen Gordy ("SA Gordy"), interviewed the Defendant at the county jail on November 21, 2005 after Defendant waived his *Miranda* rights. Defendant's Sixth Amendment right to counsel had attached to the state charges at the time SA Gordy interviewed Defendant. The United States asserts that during the interview, Defendant denied firing the gun at issue but admitted throwing it into the woods. On December 13, 2005, a one-count federal indictment was returned charging Defendant as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) [Doc. 1].

## III. Parties' Positions

At issue is whether Defendant's right to counsel for the uncharged federal felon-in-possession offense had attached at the time he was questioned by SA Gordy. Defendant asserts his Sixth Amendment constitutional rights were violated and, as a result, his statement should be suppressed. The United States argues that even if the state and federal felon-in-possession charges

contain the same elements,[1] they are separate offenses under the doctrine of dual sovereignty for Sixth Amendment purposes.

IV.     **Analysis**

   A.     **Dual Sovereignty in the Context of the Fifth Amendment**

The Fifth Amendment Double Jeopardy Clause guarantees no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U. S. Const. amend. V. It is well established that prosecution in both state and federal courts for the same criminal conduct is not double jeopardy. *Heath v. Alabama*, 474 U.S. 82, 88 (1985); *United States v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2001). As set forth in *Heath*:

> The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the "peace and dignity" of two sovereigns by breaking the laws of each, he has committed two distinct "offences."

474 U.S. at 88 (1985) (citing *United States v. Lanza*, 260 U.S. 377, 382 (1922)). The "Court has plainly and repeatedly stated that two identical offenses are not the 'same offence' within the meaning of the Double Jeopardy Clause if they are prosecuted by different sovereigns." *Id.* at 92.[2]

---

[1] This court previously determined the state and federal offenses are the "same offence" under the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932) [Doc. 92 at 5-7].

[2] The Supreme Court has also noted a critical determination for the application of the dual sovereignty doctrine is whether the two entities seeking to prosecute for the same source of conduct are separate sovereigns. *Heath*, 474 U.S. at 88. The Court has found the dual sovereignty doctrine inapplicable where "the two prosecuting entities did not derive their powers to prosecute from independent sources of authority," such as federal and territorial courts or two municipalities within a state that both derive their power to prosecute from the authority of the state. *Id.* at 90. This is obviously not the instant situation as the State of Tennessee and the United States are separate sovereigns. *Id.* at 89 (citing *United States v. Wheeler*, 435 U.S. 313, 320 n.14 (1978)).

3

In *Abbate v. United States*, 359 U.S. 187, 195 (1959), the petitioner sought to have the Court overrule the dual sovereignty doctrine set forth in *Lanza*, but the Court refused to do so stating that "undesirable consequences would follow" if *Lanza* was overruled, because it:

> would bring about a marked change in the distribution of powers to administer criminal justice, for the States under our federal system have the principal responsibility for defining and prosecuting crimes. Thus, unless the federal authorities could somehow insure that there would be no state prosecutions for particular acts that also constitute federal offenses, the efficiency of federal law enforcement must suffer if the Double Jeopardy Clause prevents successive state and federal prosecutions. Needless to say, it would be highly impractical for the federal authorities to attempt to keep informed of all state prosecutions which might bear on federal offenses.

*Id.*

### B.  Dual Sovereignty in the Context of the Sixth Amendment

The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U. S. Const. amend. VI. As the Court has already ruled:

> The Sixth Amendment is offense-specific, meaning invoking one's right to counsel for one offense does not constitute invoking that right for all other offenses. *McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991). However, invoking the Sixth Amendment for one offense invokes it for subsequent offenses, even when those offense have not yet been charged, if they constitute the same offense. *Texas v. Cobb*, 532 U.S. 162, 173 (2001).

[Doc. 92 at 4-5].

In *Cobb*, the Supreme Court noted it previously had held in *McNeil* that a defendant's statements regarding offenses for which he had not been charged were admissible notwithstanding the attachment of his Sixth Amendment right to counsel as to other charged offenses. *Cobb*, 532 U.S. at 168. The Court explicitly refused to read an exception for crimes which are "factually

4

related" to a charged offense into the offense specific definition set forth in *McNeil*. *Id.* The Court, however, also explicitly held:

> Although it is clear that the Sixth Amendment right to counsel attaches only to charged offenses, we have recognized in other contexts that the definition of an "offense" is not necessarily limited to the four corners of a charging instrument. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), we explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*, at 304, 52 S.Ct. 180. We have since applied the *Blockburger* test to delineate the scope of the Fifth Amendment's Double Jeopardy Clause, which prevents multiple or successive prosecutions for the "same offence." *See, e.g., Brown v. Ohio*, 432 U.S. 161, 164-166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). We see no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel. Accordingly, we hold that when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test.

*Cobb*, 532 U.S. at 172-73. In *Cobb*, the Court was addressing a second or successive prosecution by the same sovereign, the State of Texas--not federal and state prosecutions.

While it is settled that state and federal offenses with identical elements are separate for purposes of double jeopardy, the circuit courts are split with respect to the applicability of the dual sovereignty doctrine when determining whether identical state and federal offenses are considered the same offense for purposes of the Sixth Amendment right to counsel. The split appears to primarily arise from the Supreme Court's language in *Cobb* that "[w]e see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." *Id.* at 173. As explained below, the Second and Eighth Circuit Courts of Appeals have held the dual sovereignty doctrine does not apply in the Sixth Amendment right to counsel

5

context, but the First, Fourth, Fifth, and Eleventh Circuit Courts of Appeals have held the doctrine does apply in the Sixth Amendment context. The Sixth Circuit Court of Appeals has not yet addressed the issue.

### 1. Circuits That Apply the Doctrine to the Sixth Amendment

In *United States v. Avants*, 278 F.3d 510 (5th Cir.), *cert. denied*, 536 U.S. 968 (2002), the Fifth Circuit held federal and state prosecutions "although identical in their respective elements, were separate offenses for purposes of the Sixth Amendment because they were violations of the laws of two separate sovereigns-specifically, the State of Mississippi and the United States." *Id.* at 513. With regard to the impact of *Cobb*, the Fifth Circuit held the Supreme Court saw:

> no constitutional difference between the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel.
>
> Thus, it seems rather clear that the Supreme Court would require us to apply double jeopardy principles in determining whether two offenses are the same in the Sixth Amendment context. As we have earlier observed, identical offenses under the respective laws of separate sovereigns do not constitute the "same offense" under the Double Jeopardy Clause. By concluding without limitation that the term "offense" has the same meaning under the Sixth Amendment as it does under the Double Jeopardy Clause, the Court effectively foreclosed any argument that the dual sovereignty doctrine does not inform the definition of "offense" under the Sixth Amendment. Stated differently, the Supreme Court has incorporated double jeopardy analysis, including the dual sovereignty doctrine, into its Sixth Amendment jurisprudence.

*Id.* at 517 (internal citations and quotation marks omitted). The Fifth Circuit further held:

> It is plain to see that the federal and state murder prosecutions against [the defendant] are not the "same offense" under the Sixth Amendment because each was initiated by a separate sovereign. This is true notwithstanding that the elements of the Mississippi murder statute and the federal murder statute are virtually identical.

*Id.* at 518 (internal citations omitted).

In *United States v. Coker*, 433 F.3d 39 (1st Cir. 2005), the First Circuit found the dual sovereignty doctrine applies in the context of the Sixth Amendment right to counsel, stating:

> After carefully examining *Cobb*, we conclude that the dual sovereignty doctrine applies for the purposes of defining what constitutes the same offense in the Sixth Amendment right to counsel context. In doing so, we reject the reasoning of the Second Circuit in *Mills* and adopt the reasoning of the Fifth Circuit in *Avants*. The court in *Mills* stated that "[n]owhere in *Cobb*, either explicitly or by imputation, is there support for a dual sovereignty exception" in the Sixth Amendment right to counsel context. This statement, in our view, does not give adequate consideration to the Court's statement [in *Cobb*] that it saw "no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." If the Court intended to incorporate only the *Blockburger* test into its Sixth Amendment jurisprudence, then its statement in *Cobb* would make no sense, as there would be a difference in the meaning of the term "offense" in the contexts of double jeopardy and of the right to counsel.
>
> This conclusion is bolstered by a footnote in *Cobb,* in which the Court stated that "we could just as easily describe the Sixth Amendment as 'prosecution specific,' insofar as it prevents discussion of charged offenses as well as offenses that, under *Blockburger,* could not be the subject of a later prosecution." While the Court referenced only *Blockburger,* the statement indicates that the Court was referring to *Blockburger* in the context of its general double jeopardy jurisprudence. In other words, we understand the Court to have meant that if the government could not prosecute a defendant for an offense due to double jeopardy principles, then it could not question the defendant about that offense without implicating his Sixth Amendment right to counsel, even if the defendant had not yet been charged with the offense. In this case, double jeopardy principles would not have prevented the federal government from prosecuting [the plaintiff] because of the dual sovereignty doctrine.

*Id.* at 44-45 (internal citation omitted).

In *United States v. Alvarado*, 440 F.3d 191, 197 (4th Cir.), *cert. denied*, __ U.S. __, 127 S.

7

Ct. 81 (2006), the Fourth Circuit rejected defendant's contention his statement should be suppressed as being taken in violation of his Sixth Amendment right to counsel based upon the dual sovereignty doctrine, holding:

> Because *Cobb* clearly indicates that the definition of offense is the same in the right to counsel and double jeopardy contexts, the dual sovereignty doctrine has equal application in both. Indeed, if dual sovereignty is a central feature of double jeopardy analysis, it cannot help but be a central feature of offense-specificity analysis since the two after *Cobb* are constitutionally one and the same. That Cobb meant to adopt the dual sovereignty doctrine as a test for offense specificity is apparent from the Court's description of the right to counsel as prosecution specific. Since federal and state prosecutions have continually been treated as separate under double jeopardy analysis, the federal offense would not trigger the right to counsel under a general prosecution specific framework.

*Id.* at 196-97 (internal citations and quotation marks omitted). The Fourth Circuit concluded "[a]ny other conclusion would be an affront to both state and federal sovereignty." *Id.* at 97.

In a very recent case, understandably not cited by either party, *United States v. Burgest*, __ F.3d __, 2008 WL 659550 (11th Cir. 2008), the issue of whether to apply the dual sovereignty doctrine in the Sixth Amendment context was also addressed by the Eleventh Circuit. Noting the issue was one of first impression, the Eleventh Circuit stated it would "join the majority of circuits and hold that the dual sovereignty doctrine applies in the Sixth Amendment context." *Id.*

### 2. Circuits That Do Not Apply the Doctrine to the Sixth Amendment

In *United States v. Bird*, 287 F.3d 709 (8th Cir. 2002), the plaintiff was charged with rape in a tribal court and an attorney was appointed to represent him. *Id.* at 711. The FBI was informed of the alleged rape because the rape was subject to federal jurisdiction when committed "by an

8

Indian in Indian Country." *Id.* at 712. Tribal investigators assisted the FBI in locating the plaintiff, who after being given *Miranda* warnings, made a statement and submitted salival specimens for DNA testing. *Id.* The plaintiff was subsequently indicted by federal authorities on four counts of aggravated sexual abuse. The district court suppressed the plaintiff's statements as being in violation of the plaintiff's Sixth Amendment right to counsel, which had attached when he was appointed counsel on the tribal rape charge. *Id.* In reaching its conclusion, the district court found: (1) the federal and tribal charges were identical, (2) the FBI and tribal authorities were working in tandem, and (3) the FBI agent knew the plaintiff had been appointed counsel at the time of his arraignment on the rape charge. *Id.*

The Eighth Circuit upheld the district court, finding:

> that as a result of the way that tribal and federal authorities cooperated in connection with these charges, [the plaintiff's] indictment in tribal court inherently led to his prosecution in federal court. Considering the close working relationship between tribal and federal authorities in this case, to deny [the plaintiff] the right to counsel after the tribal indictment would deprive him of an attorney at one of the most critical stages of the proceedings against him. Therefore, we hold that [the plaintiff] is entitled to the protections of the Sixth Amendment.

*Id.* at 714. The Eighth Circuit also held that it was not "appropriate to fully rely on double jeopardy analysis here. As stated, the tribal charge in this case initiated the federal investigation and proceedings, and the tribe and the U.S. worked in tandem to investigate the rape. Furthermore, tribal sovereignty is 'unique and limited' in character." *Id.* at 715.

In *United States v. Mills*, 412 F.3d 325 (2d Cir. 2005), the plaintiff, who was incarcerated on state charges, was formally charged with a gun offense, and agreed to be interviewed about the

9

shooting of a police officer prior to his arraignment. *Id.* at 326. The plaintiff made a statement linking himself to the gun used in the shooting, which statement the government conceded had been obtained in violation of the plaintiff's Sixth Amendment rights on the state charges. *Id.* Several months later, the plaintiff was charged with unlawful gun possession under federal law, and sought suppression of his statement. *Id.* The district court granted the plaintiff's motion to suppress his incriminating statement as being obtained in violation of his Sixth Amendment rights. *Id.* The government appealed asserting the statement should not be suppressed based upon the dual sovereignty doctrine. *Id.* at 326-27. After finding the state and federal offenses were the same under the *Blockburger* test, the Second Circuit rejected application of the dual sovereignty doctrine, stating:

> *Cobb* recently, and in our view definitively, set forth the controlling test. Nowhere in *Cobb*, either explicitly or by imputation, is there support for a dual sovereignty exception to its holding that when the Sixth Amendment right to counsel attaches, it extends to offenses not yet charged that would be considered the same offense under *Blockburger*. *Cobb* makes clear that Sixth Amendment violations are offense specific and, consequently, evidence obtained in violation of the Sixth Amendment is not admissible in subsequent prosecutions for the "same offense" as defined by *Blockburger*. The fact that *Cobb* appropriates the *Blockburger* test, applied initially in the double jeopardy context, does not demonstrate that *Cobb* incorporates the dual sovereignty doctrine: The test is used simply to define identity of offenses. Where, as here, the same conduct supports a federal or a state prosecution, a dual sovereignty exception would permit one sovereign to question a defendant whose right to counsel had attached, to do so in the absence of counsel and then to share the information with the other sovereign without fear of suppression. We easily conclude that *Cobb* was intended to prevent such a result.

*Id.* at 330.

### 3. *Bartkus* Exception

As relevant to a determination of whether the dual sovereignty doctrine should be applied in the context of the Sixth Amendment right to counsel, one additional issue should be briefly addressed. Some courts recognize an "extraordinarily limited exception to the dual sovereignty doctrine" in the context of double jeopardy--the sham prosecution exception--based upon *dicta* in *Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959). *See e.g., United States v. Clark*, 254 F. App'x 528, 532-33 (6th Cir. 2007); *U.S. v. Guzman*, 85 F.3d 823, 826 (1st Cir. 1996) (quoting *Bartkus*, 359 U.S. at 123-24). The Court in *Bartkus* did not address the issue of whether a substantiated record of a sham prosecution would actually constitute an exception to the dual sovereignty doctrine, because the record at issue was not sufficient to establish the state prosecution was a tool of the federal authorities. As stated in *Guzman*, this has led to a division of opinions among various federal courts as to whether the *Bartkus* or sham prosecution exception to the dual sovereignty doctrine actually exists:

> While some courts have brushed aside this language as dictum and hinted that the *Bartkus* exception to the dual sovereign rule may not exist at all, most courts have treated the *Bartkus* intimation as good law.

85 F.3d at 826-27 (internal citations omitted). The court in *Guzman* also noted that the *Bartkus* exception is narrow and "limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Id.*

In *Clark*, the Sixth Circuit thoroughly discussed the *Bartkus* exception to the dual sovereignty doctrine. *Clark*, 254 F. App'x at 532-34. The Sixth Circuit noted the failure in *Bartkus*

11

to "identify a particular instance of a sham prosecution may mean that the exception does not exist." *Id.* at 533 (citing *United States v. Angleton*, 314 F.3d 767, 773-74 (5th Cir. 2002)). Based upon its thorough review, the Sixth Circuit also stated, "[t]he entire weight of precedent demonstrates the chimeral nature of *Bartkus'*s 'sham prosecution' exception to the dual sovereignty doctrine." *Id.* at 534.

## C. Application to this Case

In addition to relying upon *Bird* and *Mills*, Defendant relies upon two opinions issued from the Eastern District of Michigan, *United States v. Bowlson*, 240 F. Supp. 2d 678 (E.D. Mich. 2003) and *United States v. Knight*, No. 05-8155, 2006 WL 1722199 (E.D. Mich. June 22, 2006), as persuasive authority that the application of the dual sovereignty doctrine in the context of the Sixth Amendment should be rejected by this court. While these cases lend some limited support to Defendant's argument, they are not convincing and are readily distinguishable.

In *Bowlson*, the defendant was arrested and charged in state court with bank robbery and counsel was appointed to represent him in connection with the state charges. 240 F. Supp. 2d at 679. Federal officials wanted to pursue the bank robbery as a federal crime and asked the state officials to drop the state charges. *Id.* The state charges were dismissed and defendant was taken into custody the next day. *Id.* at 680. The defendant made two incriminating statements, which the defendant sought to suppress. *Id.* With regard to the issue of whether the defendant's Sixth Amendment rights were violated, the district court declined to apply the dual sovereignty doctrine stating:

> the Government contends that, first, as a separate sovereign under double jeopardy principles, the attachment of the Sixth Amendment to the state proceedings does not bind the federal authorities. This

12

> assertion is unavailing. Here, the Court is presented with the easy case where the federal and the state authorities investigations were inexorably intertwined. Agent Fleming testified that he knew about the state charges and arraignment of [defendant] on the fifth robbery. In fact, he called state officials and asked that they drop the state charges in favor of a federal prosecution, which they did. In addition, Agent Fleming testified that he is a member of a task force in Macomb County, consisting of both state and federal officials. The other person consistently involved in the investigation, even after the federal government took over prosecution of the fifth robbery, was a Macomb County detective.
>
> While it is true that state and federal crimes are separate offenses for purposes of double jeopardy, this case is distinguishable from *United States v. Avants*, 278 F.3d 510 (5th Cir. 2002) (holding that, under the dual sovereignty doctrine, even though the Sixth Amendment attached to the state crime, it did not attach to the nearly identical federal crime). In *Avants*, there was no indication that the state and federal governments cooperated in either the investigation or the prosecution. The dual nature of the investigation in this case invites abuse if this Court were to accept that federal authorities are never bound by the state's actions. Here, the federal government was involved in a joint task force consisting of state and federal officials, and the federal officials were aware of the state charges and intervened to have the state charges dropped.

*Id.* at 684.

In *Knight*, the plaintiff sought to suppress statements obtained from him on September 8, 2005, on the ground they were obtained in violation of his Sixth Amendment rights. 2006 WL 1722199 at * 1. The defendant was arrested and made post arrest statements to the state police officer. *Id.* He subsequently asked to speak with a lawyer and questioning ceased. *Id.* Defendant was charged with various state offenses, including possession of a firearm by a convicted felon. *Id.* On September 8, 2005, Defendant was arrested by federal authorities and charged with being a felon in possession of a firearm. *Id.* While being transported in the custody of federal agents, Defendant waived his *Miranda* rights and made incriminating statements. *Id.* Relying on the *Bartkus* exception, the district court found the dual sovereignty doctrine did not apply holding the district

13

the federal agent was:

> instrumental in both the state and federal criminal cases. He is both an employee of the Jackson Police Department and a member of a federal task force. Prior to his interrogation of Defendant, [the federal agent] had spoken with his fellow Jackson officers about Defendant's case and had reviewed the relevant police reports which clearly indicated that Defendant had previously asserted his right to counsel. Thus, as in *Bowlson*, "[t]he dual nature of the investigation ... invites abuse" and requires application of a rule that does not permit abuses that "would offend the spirit of the constitutional rights at issue." Id. at 684.

*Id.* at * 3.

In *Bowlson* and *Knight,* it appears application of the dual sovereignty doctrine was dismissed based upon the intertwined investigations of the state and federal authorities. *Bowlson*, 240 F. Supp. 2d at 684; *Knight*, 2006 WL 1722199 at * 2-3. The facts of this case simply do not support a finding that any sham prosecution exception would apply. There is no evidence SA Gordy knew Defendant has been appointed an attorney on the state charges at the time he spoke with Defendant because of the way Defendant's name was entered into the state computer system. Although SA Gordy admitted he was contacted by the state officers the day after Defendant's arrest, the evidence has not indicated the instant case falls within any *Bartkus* exception.

Likewise, the decision in *Bird* does not support Defendant's argument for two reasons. First, although the Eighth Circuit rejected the application of the dual sovereignty doctrine to the situation in *Bird*, it did so, in part, because of the "unique and limited nature" of tribal sovereignty. *Bird*, 287 F.3d 714. Second, the court's statements concerning the extent of the cooperation between the tribal and federal authorities suggests it may have found the situation before it fell within the *Bartkus* exception.

14

In *Mills*, the Second Circuit rejected the dual sovereignty doctrine because it found no support in *Cobb*, either explicit or implicit, for application of the doctrine to the Sixth Amendment right to counsel. 412 F.3d at 330. The court, however, did not explain why it would expect any discussion of the dual sovereignty doctrine since *Cobb* did not involve a second or successive prosecution by the federal government. As *Cobb* involved successive state prosecutions, the *Blockburger* test was the only applicable test to determine whether the offenses were the same or different for purposes of the attachment of the Sixth Amendment right to counsel--making the dual sovereignty doctrine was wholly inapplicable. Thus, contrary to the reasoning of *Mills*, the decision in *Cobb* should not be read as concluding the dual sovereignty doctrine has no place in the analysis of when the Sixth Amendment right to counsel attaches where two different sovereigns are involved. Rather, as recognized by the Fourth Circuit in *Alvarado,* because the Supreme Court's analysis of double jeopardy has repeatedly recognized federal and state crimes are not the same offense even if they proscribe the same conduct, *Cobb* should be read as including the dual sovereignty doctrine in its analysis of when the right to counsel attaches for purposes of the Sixth Amendment.

The Second Circuit also expressed concern in *Mills* that application of the dual sovereignty doctrine to the situation where the same conduct supported federal or state prosecution "would permit one sovereign to question a defendant whose right to counsel had attached, to do so in the absence of counsel and then to share the information with the other sovereign without fear of suppression." *Mills*, 412 F.3d at 330. Defendant essentially adopts this argument and urges this court to "ensure that law enforcement doesn't do an end run around the Constitution and make a mockery of the Sixth Amendment right to Counsel." [Doc. 99 at 4]. First, there is no evidence SA Gordy intentionally engaged in "an end run around the Constitution" or attempted to violate

15

Defendant's Sixth Amendment right to counsel. Second, the Supreme Court rejected a similar argument in *Cobb*--where it was argued a decision that the Sixth Amendment right to counsel was offense specific would be disastrous to a defendant's constitutional rights and would permit law enforcement officers license to conduct uncounseled interrogations--stating:

> Besides offering no evidence that such a parade of horribles has occurred in those jurisdictions that have not enlarged upon *McNeil*, he fails to appreciate the significance of two critical considerations. First, there can be no doubt that a suspect must be apprised of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct custodial interrogation. In the present case, police scrupulously followed *Miranda's* dictates when questioning respondent. Second, it is critical to recognize that the Constitution does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses.

532 U.S. at 171-72 (internal citations and footnotes omitted). The Court also stated, "[s]ince the ready ability to obtain uncoerced confessions is not an evil but an unmitigated good, society would be the loser. Admissions of guilt resulting from valid *Miranda* waivers are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *Id.* at 173 (internal citations and quotations omitted).

I **CONCLUDE** the cases relied upon by Defendant to urge this court to reject the application of the dual sovereign doctrine are readily distinguishable. I further **CONCLUDE** the dual sovereignty doctrine should be applied in the context of Defendant's Sixth Amendment right to counsel. Thus, I **FIND** Defendant's Sixth Amendment rights were not violated when he was questioned by SA Gordy under the circumstances of this case. Accordingly, I **RECOMMEND** that the remaining aspect of Defendant's motion to suppress his statement on the ground of a Sixth

Amendment violation be **DENIED**.

## V. Conclusion

For the reasons set forth above, I **RECOMMEND**[3] that the remaining aspect of Defendant's motion to suppress the incriminating statement he made on November 21, 2005 [Doc. 74] be **DENIED**.

        s/*Susan K. Lee*
        SUSAN K. LEE
        UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within ten days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).