UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 4:05-CR-38 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| | ) | |
| DAVID DONALDSON | ) | |

**MEMORANDUM & ORDER**

Defendant David Donaldson ("Defendant") filed a motion to suppress a statement, which he made to an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") on November 21, 2005, based upon his right to counsel under the Sixth Amendment of the United States Constitution (Court File No. 74).[1] The Court previously decided this motion in part. The remaining legal issue is whether the dual sovereignty doctrine is applicable to a defendant's right to counsel under the Sixth Amendment. Magistrate Judge Susan K. Lee issued a second Report and Recommendation ("R&R"), on April 15, 2008, addressing this issue, and recommended Defendant's suppression motion be denied (Court File No. 103). Defendant filed an objection to this R&R (Court File No. 104). For the following reasons, the Court **ACCEPTS** and **ADOPTS** the R&R (Court File No. 103) and **DENIES** Defendant's motion to suppress (Court File No. 74).

---

[1] Defendant's motion also sought suppression under the Fifth Amendment (Court File No. 74). The Court adopted the December 20, 2007 Report and Recommendation of Magistrate Judge Lee to the extent it denied Defendant's motion based upon the Fifth Amendment (*see* Court File Nos. 89, 93). The Court returned the issue for further briefing and analysis of the effect the dual sovereignty doctrine had on Defendant's motion to suppress based upon the Sixth Amendment (*see* Court File No. 93).

**I.    FACTS**

The facts of this case were comprehensively detailed in Magistrate Judge Lee's first Report and Recommendation, and the Court incorporates that section here (Court File No. 89, pp. 1-4).

**II.    ANALYSIS**

Defendant was charged with various state offenses, including unlawful possession of a firearm (Court File No. 89, p. 1). Defendant retained counsel and was held in state custody (*id.*, p. 2). While in state custody, a federal agent, Stephen Gordy, questioned Defendant concerning a situation involving a firearm; this situation was also the factual basis for the state offenses (*id.*). Defendant was subsequently federally charged with being a felon in possession of a firearm (*id.*). Defendant has moved to suppress the statements he made to the federal agent, arguing his retention of counsel in the state claim precluded the federal government from questioning him, without counsel present, for a federal claim of the same nature (Court File No. 74). Defendant's right to counsel is protected by the Sixth Amendment. The Sixth Amendment right to counsel, and the invocation of that right, are offense-specific; thus, the federal agent was precluded from questioning Defendant outside the presence of counsel *only if* the state and federal offenses are the same. *See McNeil v. Wisconsin*, 501 U.S. 171, 177 (1991).

Two offenses can be distinguished based upon whether they possess the same substantive elements (the *Blockburger* test), *see Blockburger v. United States*, 284 U.S. 299, 304 (1932), and whether they are based upon the laws of and pursued by the same sovereign (the dual sovereignty doctrine), *see Heath v. Alabama*, 474 U.S. 82, 89 (1985). In a previous Order, this Court held that Defendant's state and federal offenses for possession of a firearm were the same substantive offense

under the *Blockburger* test, but left open the issue of whether the dual sovereignty doctrine applied to offenses for the purpose of the Sixth Amendment right to counsel (Court File Nos. 92, pp. 5-8; 93).

Neither the United States Supreme Court nor the United States Court of Appeals for the Sixth Circuit has expressly addressed whether the dual sovereignty doctrine applies to a defendant's Sixth Amendment right to counsel, and there is a conflict among the circuits that have addressed the issue. The conflict arises from the interpretation of the Supreme Court's intent when it held "[w]e see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." *See Texas v. Cobb*, 532 U.S. 162, 173 (2001). Read broadly, the Supreme Court was incorporating all double jeopardy "offense" analysis into the right to counsel analysis, including the dual sovereignty doctrine. Read narrowly, the Supreme Court was only adopting the *Blockburger* test, dealing with the substantive elements of the offense regardless of the sovereign behind the relevant law.

The Court finds the conflict among the circuits to be misleading. The Supreme Court did not have the issue of whether the dual sovereignty doctrine applied before it in *Cobb* because the offenses in *Cobb* - state burglary offense and a federal murder offense - were separate offenses under *Blockburger*. *See Cobb*, 532 U.S. at 173. The dual sovereignty doctrine was not properly before the Court, and the above quote was in the context of and addressing only the *Blockburger* test. The *Cobb* decision thus provides no binding statement of law for this Court, and this Court is left to determine whether the Sixth Amendment right to counsel incorporates the dual sovereignty doctrine based upon a broader review of current Sixth Amendment jurisprudence.

In accordance with the following analysis, the Court holds the dual sovereignty doctrine

3

applies to the Sixth Amendment right to counsel. Defendant's state and federal offenses are not the same; the Sixth Amendment thus did not prohibit a federal agent from questioning Defendant; and, therefore, Defendant's statements to the federal agent should not be suppressed. This outcome is in accordance with the outcomes in the majority of circuits that have addressed this issue. *See United States v. Burgest*, 519 F.3d 1307, 1310-11 (11th Cir. 2008); *United States v. Alvarado*, 440 F.3d 191, 196-97 (4th Cir. 2006); *United States v. Coker*, 433 F.3d 39, 44 (1st Cir. 2005); *United States v. Avants*, 278 F.3d 510, 517-18 (5th Cir. 2002), *cert. denied* 536 U.S. 968 (2002). *But see United States v. Mills*, 412 F.3d 325, 328 (2d Cir. 2005); *United States v. Red Bird*, 287 F.3d 709, 714 (8th Cir. 2002).

    **1.**    **A sovereign has a right to investigate violations of its laws**

The Sixth Amendment right to counsel should not be construed to severely undermine the inherent and fundamental authority of a sovereign in pursuing the interests of its citizenry. Two separate sovereigns may each formulate separate laws to protect their interests, and both may separately punish anyone who violates those laws, even when both laws are violated by the same act. *See Heath*, 474 U.S. at 87 (citing *United States v. Lanza*, 260 U.S. 377, 382 (1922)) ("[E]ach government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.")

It follows that, just as both sovereigns have the inherent authority to separately pursue their interests through prosecution, those sovereigns must also possess the inherent authority to separately investigate conduct which may lead to such prosecution. *See Alvarado*, 440 F.3d at 196, 198-99

4

(recognizing that different sovereigns may investigate and enforce their laws in different ways). The investigations of one sovereign are unaffected by the developments in the investigations of the other, including a defendant's reaction to each of those investigations. As such, Defendant securing counsel in reaction to the state charges does not affect, dictate, or imply his reaction to a federal investigation.

### 2. An "offense" is inherently sovereign-specific

The dual sovereignty doctrine applies in defining an offense because an offense, by its nature, cannot be considered without its relation to a sovereign, which is a fundamental component of the very definition of an offense. An offense is a transgression of a law. *Heath*, 474 U.S. at 88 (citing *Moore v. Illinois*, 14 How. 13, 19 (1852)). A law is the product of a specific sovereign, exercising its authority to protect the interests of its citizenry. *See id.*, 474 U.S. at 88 ("The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government."); *Alvarado*, 440 F.3d at 197 (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat) 316, 418 (1819)) ("the power of punishment appertains to sovereignty, and may be exercised, whenever the sovereign has a right to act, as incidental to his constitutional powers"). Thus, although a defendant may act only once, his actions may transgress the laws of more than one sovereign, and impinge upon or threaten the interests of two separate sovereigns. *See Heath*, 474 U.S. at 88 (citing *United States v. Lanza*, 260 U.S. 377, 382 (1922)) ("When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'") Defining "offense," without considering the basis of authority which makes such conduct an offense, is an unnatural construction of the term and ignores the separate interests of the sovereigns upon whose authority the offense is based.

### 3. The Sixth Amendment is "prosecution specific"

The Supreme Court's characterization of the Sixth Amendment as prosecution-specific distinguishes offenses between two separate prosecutorial authorities. In *Cobb*, the Court wrote: "In this sense, we could just as easily describe the Sixth Amendment as 'prosecution specific,' insofar as it prevents discussion of charged offenses as well as offenses that, under *Blockburger*, could not be the subject of a later prosecution. And, indeed, the text of the Sixth Amendment confines its scope to 'all criminal prosecutions.'" 532 U.S. at 173 n.3. Thus, if a defendant could not be prosecuted for an offense based upon double jeopardy, then that defendant could not be questioned without counsel pursuant to the Sixth Amendment. *Alvarado*, 440 F.3d at 196-97 ("Since federal and state prosecutions have continually been treated as separate under double jeopardy analysis, the federal offense would not trigger the right to counsel under a general 'prosecution specific' framework.") (citation omitted); *Coker*, 433 F.3d at 44-45 ("[W]e understand the Court to have meant that if the government could not prosecute a defendant for an offense due to double jeopardy principles, then it could not question the defendant about that offense without implicating his Sixth Amendment right to counsel, even if the defendant had not yet been charged with the offense.").

Here, the federal agent did not discuss the state prosecution or any charges which would be barred by double jeopardy.[2] Defendant's prosecution-specific, Sixth Amendment right to counsel

---

[2] Defendant does not argue that the state and federal authorities were cooperating to an extent that the respective prosecutions were indistinguishable, one driving the other. *Cf. Red Bird*, 287 F.3d at 714 (holding prosecutions were not distinct where the federal and tribal governments were cooperating to an extent one prosecution drove the other). Here, the federal agent conducted his own investigation which led to the federal prosecution (Court File No. 89, p. 3).

did not preclude questioning for a possible, yet-uncharged offense in the federal context.[3]

### 4. A defendant's right to counsel is still protected

In considering whether the dual sovereignty doctrine is applicable to a defendant's Sixth Amendment right to counsel, the Court considers whether its applicability will leave a Defendant unfairly vulnerable to questioning or interrogation without counsel. Due to the other protections afforded a defendant, the Court holds Defendant's right to stay silent and obtain counsel was adequately protected.

First, the Fifth Amendment protects a person from being compelled to incriminate him or herself. *See, e.g.*, *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). A defendant in custody must be informed of his rights to seek legal counsel, and an officer must cease questioning if the defendant requests counsel. *See Davis v. United States*, 512 U.S. 452, 458 (1994).[4]

Here, Defendant was informed agent Gordy was a federal agent, and Defendant was read his *Miranda* rights, informing him of his right to counsel (Court File No. 89, p. 3). Defendant waived his right to counsel and agreed to speak with agent Gordy (*id.*). Defendant's right to have counsel present was fully protected by the Fifth Amendment; Defendant chose not to exercise that right. *See Cobb*, 532 U.S. at 171 (majority opinion); 173 (Kennedy, J., Scalia, J., and Thomas, J. concurring) ("[I]t is difficult to understand the utility of a Sixth Amendment rule that operates to invalidate a

---

[3]Furthermore, the prosecution-specific right to counsel cannot attach to a mere investigation, but requires the initiation of criminal prosecution. *See Alvarado*, 440 F.3d at 199-200 (citing *United States v. Gouveia*, 467 U.S. 180, 187 (1984)). Here, Defendant was not subject to any federal criminal prosecution when he was questioned by a federal agent, and thus his Sixth Amendment right to counsel had not yet attached.

[4]These issues were addressed more fully when the Court denied Defendant's Fifth Amendment claim (*see* Court File No. 92, pp. 3-4).

7

confession given by the free choice of suspects who have received proper advice of their Miranda rights but waived them nonetheless."); *Alvarado*, 440 F.3d at 197-98 ("[A] defendant's constitutional guarantees are not furthered by melding together federal and state sovereignty, and throwing overboard our federal system's primary shield against government abuse. . . . Rather, a defendant's rights are safeguarded by properly enforcing them in each respective sovereign's sphere.") (citation omitted).

Second, a defendant is protected from concerted efforts by the state and federal government which could otherwise circumvent the defendant's Sixth Amendment right to counsel. *See Coker*, 433 F.3d at 45-46 (offenses are not distinct under the dual sovereignty doctrine when "one sovereign is controlling the prosecution of another merely to circumvent the defendant's Sixth Amendment right to counsel" and when "one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham."); *Burgest*, 519 F.3d at 1311 n.5 (citing *Coker*). If the federal government and a state government cooperate to an extent that investigation and prosecution by one drives the other, the defendant's invocation of his right to counsel applies in both proceedings. *See, e.g.*, *Red Bird*, 287 F.3d at 714 (a defendant's invocation of his right to counsel in tribal proceedings also applied to federal charges where "indictment in tribal court inherently led to his prosecution in federal court" and "[c]onsidering the close working relationship between the tribal and federal authorities."); *see also United States v. Charley*, 396 F.3d 1074, 1083 n.6 (9th Cir. 2005) (holding dual sovereignty applied when the substantial cooperation in *Red Bird* was not present).

Here, there is no indication the federal agent was substantially cooperating with the state authorities, or that his investigation was being driven by the state prosecution (*see* Court File No.

89, p. 3).

### 5. The appellate case law cited by Defendant is readily distinguishable

The Court has adopted Magistrate Judge Lee's thorough analysis of the case law (*see* Court File No. 103), but will make a few brief remarks as to the two appellate cases cited by Defendant in his objections (Court File No. 104, pp. 3-4). Both cases involved situations where two sovereigns cooperated in the investigations and prosecutions to the extent that the investigations and prosecutions could not be fairly considered separate.

In *Red Bird*, the Eighth Circuit held: "We find that as a result of the way that tribal and federal authorities cooperated in connection with these charges, Red Bird's indictment in tribal court inherently led to his prosecution in federal court." 287 F.3d at 714. In directly addressing the double jeopardy analysis, the court stated: "We do not believe that it is appropriate to fully rely on double jeopardy analysis here. As stated, the tribal charge in this case initiated the federal investigation and proceedings, and the tribe and the U.S. worked in tandem to investigate the rape. Furthermore, tribal sovereignty is "unique and limited" in character." *Id.* at 715 (citation omitted). This extensive cooperation is not present in Defendant's case. *Cf. Coker*, 433 F.3d at 46-47 (holding the *Red Bird* rationale did not apply without extensive cooperation).

In *United States v. Mills*, the Second Circuit stated: "The issue on this appeal is whether statements taken by local police, in violation of a defendant's right to counsel as to previously charged state offenses but prior to the filing of federal charges for the same crime, can be admitted in the federal prosecution. We hold that they cannot." 412 F.3d 325, 328 (2d Cir. 2005). Based upon this determination, the *Mills* court then generalized that the dual sovereignty doctrine did not apply to a defendant's Sixth Amendment right to counsel generally. *See id.* at 327, 330.

Although this Court rejects this generalization, the outcome here is consistent with the rationale for the *Mills* decision. In *Mills*, unlike here, the interrogation at issue was not conducted by the federal government for the purpose of potential federal offenses, but rather was conducted by local police in violation of the defendant's Sixth Amendment right to counsel in relation to the state charges. *See* 412 F.3d at 328. The *Mills* court emphasized: "Where, as here, the same conduct supports a federal or a state prosecution, a dual sovereignty exception would permit one sovereign to question a defendant whose right to counsel had attached, to do so in the absence of counsel and then to share the information with the other sovereign without fear of suppression. We easily conclude that *Cobb* was intended to prevent such a result." *Id.* at 330.

Similarly, in this Court's decision, this circumvention of a defendant's Sixth Amendment right to counsel is prevented. The "extensive cooperation" exception to the dual sovereignty doctrine would have precluded the federal government in *Mills* from deriving their case from the improper interrogation of state and local authorities. *See Charley*, 396 F.3d at 1083 n.6. This Court is unwilling to follow the broader generalization of the *Mills* court, *see* at 412 F.3d at 327, 330, which results in the needless exclusion of uncoerced confessions where the dual sovereigns have not cooperated to an extent a defendant would be deprived of his asserted right to counsel. *See Cobb*, 532 U.S. at 172. Here, the Sixth Amendment should not preclude a federal agent from questioning Defendant concerning a potential federal offense after Defendant was fully informed of his right to counsel pursuant to the requirements of the Fifth Amendment.

**6.     Society has a compelling interest in finding, convicting, and punishing criminals**

Finally, society's interests are served by application of the dual sovereignty doctrine. As the Supreme Court stated: "Since the ready ability to obtain uncoerced confessions is not an evil but an

unmitigated good, society would be the loser. Admissions of guilt resulting from valid Miranda waivers 'are more than merely "desirable"; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law." *See Cobb*, 532 U.S. at 172 (citing *McNeil*, 501 U.S. at 181).

In particular, law enforcement officers must retain adequate freedom to investigate criminal activity, and further limitations on that freedom will produce a "chilling" effect in investigations. As the Supreme Court stated: "it is critical to recognize that the Constitution does not negate society's interest in the ability of police to talk to witnesses and suspects, even those who have been charged with other offenses." *Id.* at 171-72. Indeed, the majority of the Court, in addressing the three dissenting justices, continued: "The dissent seems to presuppose that officers will possess complete knowledge of the circumstances surrounding an incident, such that the officers will be able to tailor their investigation to avoid addressing factually related offenses. Such an assumption, however, ignores the reality that police often are not yet aware of the exact sequence and scope of events they are investigating-indeed, that is why police must investigate in the first place. Deterred by the possibility of violating the Sixth Amendment, police likely would refrain from questioning certain defendants altogether." *Id.* at 173.

Furthermore, the Fourth Circuit recognized the interest of separate sovereigns in investigating and prosecuting their laws as they see fit. *See Alvarado*, 440 F.3d at 196 ("[D]ifferent sovereigns often define and prosecute similar crimes in different ways."); *id.* at 198-99. It is the prerogative of a sovereign not only to establish the law, but determine by what means those laws are enforced. Without application of the dual sovereignty doctrine here, the federal government would have been stripped of its ability to determine the method and nature of its own investigation and

subsequent prosecution.

### III. CONCLUSION

Application of the dual sovereignty doctrine in defining "same offense" for the Sixth Amendment right to counsel is consistent with a sovereign's authority to investigate violations of its laws; protects society's interests in finding, convicting, and punishing law-breakers, and empowers its agents with the ability to do so; and, does not undermine the already-robust protection afforded defendants through the Fifth Amendment and "extensive cooperation" exception of the dual sovereignty doctrine. For these reasons, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's R&R (Court File No. 103) and **DENIES** Defendant's motion to suppress (Court File No. 74).

**SO ORDERED.**

**ENTER:**

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**